**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOSHUA WILEY MITCHELL, #02166529** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:20cv811** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Joshua Wiley Mitchell, an inmate confined in the Texas prison system, with the assistance of counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Lamar County convictions, Cause No. 27395. On December 4, 2017, a jury found Petitioner guilty of aggravated assault with a deadly weapon and family violence assault.[1] (Dkt. #14-16, pp. 24-27). The trial court sentenced Petitioner to fifty years' confinement for each offense, with the sentences to run concurrently. (Dkt. #14-16, pp. 24, 26).

Petitioner appealed his conviction, and by order dated August 29, 2018, the Court of Appeals for the Sixth Appellate District of Texas (the "Sixth District Court of Appeals") sustained Petitioner's contention that the trial court erred in denying his request for a psychological

---

[1] Petitioner was also convicted of witness tampering in Cause Number 27468; however, the trial court's judgment was reversed, and the case was remanded for a new trial. *Mitchell v. State*, 572 S.W.3d 303, 310 (Tex. App. 2019). Ultimately, the State moved to dismiss the case (Dkt. #15-19, p. 4), and on October 2, 2020, an order of dismissal was entered. (Dkt. #1-2 p. 8).

examination and abated the appeal with instructions to the trial court to conduct a retrospective competency trial, if such a trial were feasible. (Dkt. #14-3). On December 19, 2018, the trial court found that a retrospective competency trial was feasible, conducted the trial (Dkt. #15-2), and found Petitioner to be competent (Dkt. #14-18, pp. 3-9).

On March 14, 2019, the Sixth District Court of Appeals modified the trial court's aggravated assault judgment to state "22.02 & 12.42 Penal Code" as the "Statute for Offense" and modified the family violence assault judgment to state "22.01 & 12.42 Penal Code" as the "Statute for Offense." *Mitchell v. State*, No. 06-18-00014-CR, 2019 WL 1186977 (Tex. App. Mar. 14, 2019) (Dkt. #14-1). As modified, the Sixth District Court of Appeals affirmed the trial court's judgments. *Id.* Petitioner filed a petition for discretionary review ("PDR") (Dkt. #14-9), which the Texas Court of Criminal Appeals ("TCCA") refused on July 24, 2019. *See Mitchell*, 2019 WL 1186977.

Petitioner, with the assistance of counsel, filed an application for state habeas corpus relief on July 20, 2020. (Dkt. #15-16, pp. 37-55). On October 7, 2020, the TCCA denied the application without a written order. (Dkt. #15-18).

Petitioner, with the assistance of counsel, filed the instant petition, along with a supporting memorandum, on October 19, 2020. (Dkt. #1). Petitioner asserts the following claims for relief:

1.  Counsel provided ineffective assistance by failing to request the trial court to appoint, or to independently obtain, a medical expert to evaluate Petitioner for the retrospective competency hearing as required by Section 46B.021 of the Texas Code of Criminal Procedure.

2.  Counsel provided ineffective assistance by failing to file a motion to recuse the trial judge from the retrospective competency hearing when the trial judge made a statement during sentencing indicating severe bias toward Petitioner.

(Dkt. #1, pp. 7-8; Dkt. #1-1). The Director filed a response, arguing Petitioner's claims are without

merit. (Dkt. #17). Petitioner, with the assistance of counsel, filed a reply. (Dkt. #21).

## II.  FACTUAL BACKGROUND

The Sixth District Court of Appeals set out the facts as follows:

After returning to their Lamar County home from a trip to Houston, Mitchell assaulted his wife, Lauren Hughes, punching her in the face, dragging her into the house, kicking and stomping her with his boots, and throwing their television on her. The next day, on July 20, 2017, the couple drove to the home of Hughes' mother, Janice Hughes, to pick up the couple's one-year-old child, who was staying with Janice while they went to Houston for Mitchell's medical appointment.

Mitchell dropped Lauren off on a county road near Janice's house, and she hid in the wooded area while Mitchell approached Janice's house to retrieve the child. Lauren ran through the wooded area and entered a small convenience store, Homer's Quick Stop. Diane Boyette, the cashier working at the time, testified that Lauren ran into the store and said she needed help. Boyette saw that one of Lauren's eyes was swollen shut and the other was nearly so. After a telephone call from Boyette, the police and medical personnel arrived a short time later, and Lauren was taken to a hospital where her injuries were photographed and she described to law enforcement officers what had happened to her.

A few days later, Mitchell was found and arrested. He was charged with aggravated assault with a deadly weapon (the boots he was wearing) and family violence assault, and after having sent almost a dozen letters to Lauren from prison, he was also charged with tampering with a witness. All the charges alleged that Mitchell was a habitual offender. Before trial, Mitchell's counsel filed a motion and supporting affidavit seeking to have a formal competency examination performed on Mitchell, which, after an informal inquiry, the trial court denied. During the trial, photographs of Lauren's injuries and the letters were admitted into evidence and shown to the jury. After seeing the exhibits and hearing the testimony of Boyette, Janice, Lauren, Mitchell's mother, law enforcement personnel, and medical personnel, Mitchell was convicted on all three charges and sentenced to fifty years in prison for each offense, with the three sentences to run concurrently.

*Mitchell v. State*, 572 S.W.3d 303, 305-06 (Tex. App. 2019).

## III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody

is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a

federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of

fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an

adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

Petitioner asserts claims of ineffective assistance of counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

With the foregoing principles in mind, the Court will turn to Petitioner's specific allegations of ineffective assistance of counsel.

## A.     <u>Failure to Request or Obtain a Medical Expert</u>

Petitioner asserts his counsel provided ineffective assistance by failing to request the trial court to appoint, or to independently obtain, a medical expert to evaluate Petitioner for the retrospective competency hearing. (Dkt. #1, p. 7; Dkt. #1-1, pp. 19-22).

By way of background, the Court sets forth the state trial court's following findings of fact and conclusions of law regarding the retrospective competency determination:

### <u>FINDINGS OF THE TRIAL COURT</u>

1. On July 22, 2017, the Defendant Josh Mitchell was arrested following an alleged domestic violence incident occurring in the early morning hours of July 20, 2017.

2. The Defendant did not post bond and remained in the Lamar County Jail.

3. A Lamar County Grand Jury indicted the Defendant on August 17, 2017, for the offenses of Aggravated Assault with a Deadly Weapon, Habitual Offender, and Assault Family or Household Member with a Prior Conviction, Habitual Offender. This was given Cause No. 27395.

4. On August 18, 2017, Mr. Michael Mosher entered an appearance as counsel for the Defendant after having been retained.

5. While incarcerated, it was alleged that the Defendant attempted to communicate with the complaining witness to affect her testimony and this prosecution.

6. A Lamar County Grand Jury then indicted the Defendant Josh Mitchell on September 14, 2017, for the offense of Tampering with a Witness, Repeat Offender. This was given Cause No. 27468.

7. Again, Mr. Mosher entered an appearance as counsel of record for the Defendant in this subsequent matter.

8. On October 17, 2017, the State of Texas gave notice of its intention to consolidate these indictments for trial which was set for November 27, 2017.

9. In accordance with the Trial Court's case management practices, these matters were called for a Pretrial Status Conference on November 17, 2017.

10. After having been in custody for approximately 117 days, Defendant's counsel orally suggested at this Conference that the Defendant was incompetent to stand trial.[1]

> [FN1] The "Declaration" was referred to as an Affidavit by Defendant's counsel as well as the Appellate Court in its Order dated August 29, 2018. However, the Declaration is unsworn. This filing wasn't formally made with the District Clerk until after the Pretrial Status Conference was held.

11. After Defendant's counsel moved the court for a mental examination, the State in turn argued against the motion pointing out recent interactions it had with the Defendant in the course of protective order proceedings.

12. The Court then attempted to make an informal inquiry with the Defendant regarding the claims that he could not make coherent statements or assist with his defense. Defendant's counsel, though, refused to allow the Trial Court to conduct such inquiry.

13. With only Defense Counsel's statements and nothing more, the Trial Court denied the Defendant's request for a mental examination.

14. These matters proceeded to trial on November 27, 2018. The jury found the Defendant guilty in both cases and assessed punishment at Fifty Years with the sentences running concurrently.

15. The Defendant then appealed these convictions. In pertinent part, the Defendant argued that the Trial Court erred by denying his request for a psychological assessment.

16. Because the Trial Court denied the Defendant's request although an allegation of incompetency existed, the Appellate Court abated the appeal asking that the Trial Court, if feasible, conduct a retrospective competency trial.

17. On December 19, 2017, the Trial Court did conduct a retrospective competency trial.

18. In advance of said trial, the Trial Court appointed Nick Stallings as trial counsel for the Defendant.

19. The Defendant was further bench warranted back for the trial, so he could make a personal appearance.

20. During the retrospective competency trial, the Defendant presented two witnesses—Lorraine Roberts, the Defendant's mother, and Mike Mosher, Defendant's original trial counsel.

21. Ms. Roberts testified that the Defendant had been committed to a mental facility at the age of 14 years.[2] She further testified that the last visit she had with the Defendant was the Saturday before the trial began. At that visit, she talked to him about the case. She went on to say that she believed the Defendant was not given the cancer medications he was prescribed while at the jail. She stated that she discussed this issue with the jail staff as well as Mr. Mosher.

    [FN2] Defendant was 35 years old at the time of trial.

22. Mr. Mosher testified that early in his representation there was no issue regarding incompetence. This issue only arose in early November. Mr. Mosher stated that his client's thought processes were not coherent and that he didn't think the Defendant could testify at trial. Mr. Mosher went on to state that his client was a "hindrance" to his defense. However, when pressed for details, Mr. Mosher would not offer any specific facts claiming such disclosure would violate the attorney-client privilege.

23. Upon cross examination by the State, State's Exhibit 8 was admitted. This Exhibit was a Pauper's Oath signed by the Defendant. The Defendant signed this document the same day that Mr. Mosher made his suggestion of incompetency as well as filed his Declaration alleging his client to be incompetent.

24. The Trial Court also admitted State's Exhibit 1 which was the Lamar County Jail's Visitor Record. This record showed that Mr. Mosher met with the Defendant on November 15, 2017, for one-hour. This contradicted Mr. Mosher's statement in his Declaration that he met with the Defendant on November 14, 2017 for one- and one-half hours.

25. In their case-in-chief, the State called two witnesses—Jeff Raney, Shift Sargent at the Lamar County Jail, and Thomas Cox, a Lamar County Deputy responsible for prisoner transports.

26. Sargent Raney testified that he was at work the day Mr. Mosher actually visited with the Defendant on November 15, 2017. He testified about a conversation he had with the Defendant at the conclusion of that attorney-client meeting. Specifically, the Defendant exited the meeting and asked to use the telephone to call his mother because, ". . . he was going to get a lot of time" as a result of upcoming trial. Sargent Raney testified that he was not distressed or disturbed.

27. Deputy Cox testified to his interaction with the Defendant during transports and other events. Deputy Cox spoke specifically about a meeting he and other jail staff had with the Defendant when the Defendant refused medical treatment— a transport for cancer treatments in Houston—on November 20, 2017. The Defendant told Deputy Cox that he was concerned about going to Houston because he was in the process of preparing for trial with his counsel. As per policy, the Defendant went on to sign a formal Medical Treatment refusal form which was contained in the State's Exhibit 2 (Lamar County Jail Medical Records.)

28. Along with the two witnesses, the State's [sic] offered further evidence showing no documented mental issues. These included medical records from M.D. Anderson Hospital (State's Exhibit 5), the Lamar County Jail Records (State's Exhibit 3) and TDCJ Medical Records (State's Exhibit 6).

29. Finally, the Trial Court included in the Record its personal observations from the original trial of this matter. These observations included the fact that the Defendant took notes during the trial and did not act in a disruptive manner during the course of the trial.

30. At the conclusion of the retrospective competency trial, the Trial Court found the Defendant competent.

## **CONCLUSIONS OF LAW**

1. On suggestion that the Defendant is incompetent to stand trial, a trial court is obligated to make an informal inquiry whether there is some evidence from any source that would support a finding of incompetency. CCP 46B.004.

2. Mr. Mosher, through his motion, made such a suggestion which then prompted the Court to move forward to an informal inquiry.

3. Although the standard is not onerous, the evidence presented at the informal inquiry must show that the Defendant suffers from a mental illness. Boyett v. State, 545 S.W.3d 566 (Tex. Crim. App. 2018).

4. No such evidence was presented at the informal inquiry. In fact, when the Trial Court attempted to make inquiry with the Defendant regarding his mental status, Defendant's trial counsel rejected the Court's attempt.

5. Understanding the Appellate Court's instructions, though, this Court did conduct the competency trial finding that it was feasible to do so.

6. In this matter, Defendant's trial counsel alleged that he was unable to make meaningful decisions about trial strategy nor could he take the stand in his own defense. These conclusions were contradicted in many ways. For example, the Defendant executed a Pauper's Oath on the very day a suggestion of incompetency was made. Two days before the suggestion, the Defendant disclosed his belief regarding the outcome of the trial would be a long incarceration and he needed to call his mother. Three days after the suggestion, the Defendant voluntarily refused medical transport for cancer treatments in Houston, so he could assist his trial counsel with trial preparations.

7. The foregoing evidence, all contemporaneous with the trial of this matter, show the Defendant to be competent.

(Dkt. #14-18, pp. 3-8).

Petitioner asserts counsel should have requested the trial court to appoint an expert, or counsel should have independently obtained an expert, to evaluate Petitioner for the retrospective competency hearing.[2] (Dkt. #1, p. 7; Dkt. #1-1, pp. 19-22).

To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the proceeding. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Additionally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."

---

[2] To the extent Petitioner argues counsel's failure to obtain an expert resulted in a violation of his rights under article 46B.021 of the Texas Code of Criminal Procedure, the claim fails to raise a federal constitutional issue. Federal habeas corpus relief does not lie for errors of state law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Vaughn v. Stephens*, No. 4:14-CV-218-Y, 2015 WL 3504941, at *3 (N.D. Tex. June 3, 2015).

*Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). A habeas petitioner must overcome a strong presumption that counsel's decision in not calling a particular witness was a strategic one. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). In cases where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance of counsel are viewed with great caution. *See United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984). Moreover, for a petitioner to succeed on the claim, he must have shown that had counsel investigated, he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, they would have been willing to testify, and their testimony would have been favorable to the defense. *See Alexander*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107,1109-10 (5th Cir. 1984). "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

Furthermore, as previously stated, strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *See Crane v. Johnson*, 178 F.3d 309, 309 (5th Cir. 1999).

Petitioner has failed to satisfy his burden regarding counsel's failure to request or secure a medical expert to ascertain Petitioner's competency at the time of his original trial.[3] Medical records dating just prior to trial and shortly after sentencing indicate Petitioner was competent and not suffering from any mental illness or confusion. Additionally, the jailers did not observe any signs Petitioner was incompetent around the time of trial; Petitioner's demeanor during trial did not indicate incompetency; Petitioner signed the Pauper's Oath; and nobody had sought guardianship of Petitioner or even raised the issue of incompetency during trial or sentencing (beyond trial counsel's unsworn declaration before trial). In light of this evidence and the substantial passage of time between the retrospective competency hearing and the trial, counsel reasonably could have determined that a retrospective expert evaluation would not have been practical, an efficient use of resources, or even helpful to Petitioner. Indeed, the trial court discussed the issue of an expert conducting a competency examination retrospectively:

> But procedurally—because I'm running into some issues here in my head under 46B.005 that says upon the suggestion then the Court needs to stop and order an examination.
>
> Well, you know, ordering Dr. Bell to come in here today to examine him—Bell— I know what he's going to say is, well, you know, I can't do that. And that's why we have this retrospective trial, to look at circumstantial evidence. The only testimony I've got that would even indicate some incompetency was an unsworn declaration that I'll just tell you, there was no challenge to the Court's ruling and that was presented to me I guess on the 20th maybe, the 17th. And we didn't pick the jury until the 27th. Mr. Mosher had every chance to seek relief from the Court of Appeals through a writ of mandamus. And something of this nature, the Court might've taken up.
>
> But I don't even think there was a challenge to it through the course of the trial. I haven't reviewed my notes but even at sentencing there was not a claim of some legal impediment. So, I guess that I'm asking you is: Outside of Mr. Mosher's

---

[3] The federal constitutional standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990).

affidavit, what evidence did I have or this Court have to find incompetence at that time?

. . . .

[T]he question the Court has is under that 46B.005—you know, when you read it it says upon competent evidence or, you know, some suggestion it's a very much lower standard that the Defendant would've had to present.

But at this retrospective stage, how do I resolve the issue of requiring examination? Because I think—I don't think any of us are going to disagree with the fact that I've got to have Bell look at him today, tomorrow, whenever. He's going to say, well, my examination would've had to have been at that time to look at those medical or psychiatric issues.

But, when we do a retrospective, my understanding is—or what I'm thinking is the examination is a nullity. Instead, we have to look at other factors, other circumstantial evidence and the like.

(Dkt. #15-2, pp. 78-79, 82).

Petitioner has failed to overcome the presumption that counsel's decision not to request or obtain an expert witness to opine on Petitioner's competency a year prior to the retroactive competency hearing, and instead rely on the testimony of Petitioner's mother and trial counsel, was reasonable strategy. Nor is it evident, as reflected by the trial court's comments above, that had counsel requested an expert to examine Petitioner, the trial court would have granted the request, or if it had granted the request, that the expert would have been able to determine competency a year before the examination. Further, Petitioner has failed to offer an affidavit from an expert witness, has not shown that any expert witness would have appeared and testified favorably as to his competency at the time of trial during his retrospective competency hearing, and has not shown how it would have changed the outcome of the competency hearing. Thus, Petitioner has failed to demonstrate deficient performance or prejudice. Accordingly, Petitioner has failed to establish the state court's rejection of Petitioner's ineffective assistance of counsel

claim was objectively unreasonable. *See Richter*, 562 U.S. at 101. Accordingly, this ground for habeas relief should be denied.

**B.    Failure to File Motion to Recuse Trial Judge**

Petitioner also contends counsel provided ineffective assistance by failing to file a motion to recuse the trial judge from the retrospective competency hearing when the trial judge made a statement during sentencing indicating severe bias toward Petitioner. (Dkt. #1, p. 8; Dkt. #1-1, pp. 23-25).

"Stated succinctly, the cornerstone of the American judicial system is the right to a fair and impartial process." *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997)). Therefore, any judicial officer incapable of presiding in such a manner violates the due process rights of the party who suffers the resulting effects of that judicial officer's bias. *Id.* "[T]he Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, [however,] not a uniform standard." *Bracy*, 520 U.S. at 904. This floor "clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 905 (citation omitted).

However, "bias by an adjudicator is not lightly established." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997)). Courts ordinarily "presume that public officials have properly discharged their official duties." *Bracy*, 520 U.S. at 909 (internal quotation marks and citations omitted). General allegations of bias or prejudice are insufficient to establish a constitutional violation. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986); *Richardson*, 537 F.3d at 474. The Supreme Court has stated that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Lavoie*, 475 U.S. at 820 (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)). "So even if a

17

judge is disqualified under state or federal law, the disqualification is not always required by the Due Process Clause." *Richardson*, 537 F.3d at 474-75 (citation omitted).

Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). In proving actual bias, a defendant must show a prejudiced disposition "in [his] own case." *Bracy*, 520 U.S. at 909. In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Bigby*, 402 F.3d at 560 (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of actual bias on the part of the trial judge").

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. *Buntion*, 524 F.3d at 672. Presumptive bias occurs when a judge may not actually be biased but has the appearance of bias such that "the probability of actual bias . . . is too high to be constitutionally tolerable." *Id.* (quoting *Withrow*, 421 U.S. at 47). There are three situations in which the Supreme Court has found presumptive bias: (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby*, 402 F.3d at 558-59 (citing Supreme Court cases).

Nonetheless, the Supreme Court has implicitly and explicitly rejected the notion that rulings, statements, and comments made by a judicial officer antagonistic to a party, its counsel, or the party's case necessarily warrant relief under the federal habeas corpus statutes as proof of disqualifying bias: "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. On the contrary, the Supreme Court has recognized that trials are conducted by judicial officers who retain their character as human beings:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (CA2 1943).
>
> . . .
>
> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [ ] In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible*. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S. Ct. 230, 65 L. Ed. 481 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced

against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.* A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

*Id.* at 550-51, 555-56 (internal citation omitted) (emphasis added).

Petitioner argues the following remarks of the trial judge during sentencing demonstrates the trial judge was biased against Petitioner at the retrospective competency hearing:

> I know a lot of folks who have had cancer. One of which is my dad. He was the greatest guy ever and he suffer[ed] and died from cancer. Never once did he lift a hand toward any other human, whether it be me, his mother, my sister, his friends, coworkers. To me it's an abomination to sit here and tell me that cancer played a role in your decision to beat up on people.

(Dkt. #15-8, p. 80). According to Petitioner,

> Clearly, the trial court did not believe anything [Petitioner] presented concerning his condition. With the court having already formed such a strong personal opinion concerning [Petitioner] (it sentenced him to fifty years) and his counsel's legal strategy, [Petitioner] faced an uphill battle going into the retrospective competency exam due to the trial judge's apparent bias.

> . . . . Due to this bias, it was impossible for [Petitioner] to receive a fair trial at the retrospective competency hearing.

(Dkt. #1-1 p. 25).

There is no allegation in this case that the trial judge's allegedly biased comments resulted from the trial judge receiving information about Petitioner other than through the Petitioner's pretrial and trial court proceedings. The trial judge's rejection of Petitioner's defense that "the cancer made him do it" was based on the judge's personal experience with people who have had cancer and comparing their conduct with the evidence of Petitioner's conduct introduced at trial— specifically, Petitioner used a deadly weapon against his wife and had previously committed acts of violence against numerous women. (Dkt. #15-8, pp. 79-81). The trial judge's comments at

sentencing after a jury trial do not evidence the high degree of antagonism that makes fair judgment at the retrospective competency hearing impossible. Rather, the trial judge's sentencing comments reflect little more than the perfectly human incredulity which naturally attaches to persons who attempt to justify their violent misconduct on the grounds that they have cancer. Simply put, the trial judge did not accept Petitioner's argument that he should receive a lesser sentence because "the cancer made him do it." The trial judge's comments were no more evidence of disqualifying bias than this Court's rulings rejecting Petitioner's ineffective assistance of counsel claims herein on the merits.

Because Petitioner fails to allege or demonstrate the trial judge had a demonstrable bias towards Petitioner's retrospective competency hearing, trial counsel cannot be found ineffective for failing to file a meritless motion to recuse the trial judge. *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012) (the Fifth Circuit has made clear "counsel is not required to make futile motions or objections") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Accordingly, Petitioner fails to demonstrate the state court's rejection of this claim was unreasonable or contrary to established federal law. Petitioner is not entitled to habeas relief on this ground, and the claim should be denied.

## V.  CONCLUSION

Petitioner has failed to show that his claims have merit. Specifically, Petitioner has failed to demonstrate counsel rendered ineffective assistance under *Strickland* at the retrospective competency hearing. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was

21

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without

reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 25th day of October, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE